UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| RIA MIALIZA O. PAESTE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> GOVERNMENT OF GUAM, et al., <br><br> Defendants. | CASE NO. 11-00008-CBM <br><br> ORDER GRANTING PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS |

The matter before the Court is Plaintiffs' Motion for an Award of Attorney's Fees and Costs. [Docket No. 202.] For the reasons stated below, the Court **GRANTS** the Motion in part.

**I.  FACTUAL AND PROCEDURAL OVERVIEW**

Plaintiffs Ria Mializa O. Paeste, Jeffrey F. Paeste, Sharon Zapanta, and Glenn Zapanta are residents and taxpayers on Guam who brought suit to challenge government practices relating to the administration of the Guam Territorial Income Tax ("GTIT"). (First Amended Class Action Complaint ("FAC") at ¶ 1.)

1

Plaintiffs alleged that, even as the Government of Guam is unable to pay all GTIT refunds, it distributes about $15 million a year to certain taxpayers who procure "expedited" refunds. (*Id.* at ¶ 3.) The expedited refunds are intended for taxpayers suffering through a medical emergency, death in the family, or other financial hardship. (*Id.* at ¶ 4.) Plaintiffs further alleged that, in practice, the payments are *ad hoc* and/or are based on a system of political patronage or personal connections. (*Id.* at ¶ 4.)

Following Defendants' unsuccessful motion to dismiss Plaintiffs' FAC (Docket Nos. 38, 86, 136) the Court certified a class consisting of:

> All persons and entities who have filed or will file a claim for refund of an overpayment of the Guam Territorial Income Tax:
> **(i)** which the Government of Guam has processed or will process and deemed valid; **(ii)** who have met the procedural requirements outlined in 26 U.S.C. §§ 7422(a) and 6532(a); and **(iii)** who nonetheless have not received or will not receive their refund six months after filing the claim for refund.

(Docket Nos. 132, 133.)

The parties engaged in discovery, including document requests, requests for admission, interrogatories, and sixteen depositions. (Declaration of Daniel C. Girard In Support of Plaintiffs' Motion for an Award of Attorney's Fees and Costs ("Girard Decl.") at ¶¶ 6-11, Docket No. 203; Resp. at 10.) Plaintiffs also filed two motions to compel production of documents. [Docket Nos. 59, 118.]

Plaintiffs moved for summary judgment after the close of discovery.[1] [Docket No. 160, 153.] Following argument by the parties, the Court granted Plaintiffs' motion as to both of Plaintiffs' causes of action. The Court found that by failing to fully administer taxpayer claims for GTIT refunds in a timely, orderly, and equitable manner, Defendants violated their administrative and

---

[1] Around the same time, the parties participated in a settlement conference before Magistrate Judge Joaquin V.E. Manibusan. [Docket Nos. 183, 184.] The settlement conference was unsuccessful.

2

enforcement responsibilities under the Organic Act, 48 U.S.C. § 142li. (Findings of Fact and Conclusions of Law at ¶¶ 6-7, 18-20, Docket No. 196.) The Court also found that the Defendant officials denied taxpayers the right to equal protection of the laws in violation of 42 U.S.C. § 1983 by partially administering taxpayer claims for GTIT through an arbitrary, *ad hoc* process. (*Id.* at ¶¶ 8-16, 21-30.)

Pursuant to Fed. R. Civ. P. 54(d), Plaintiffs timely moved for award of attorney's fees and costs within fourteen days of the Court's entry of judgment in their favor. [Docket Nos. 197, 202.] Plaintiffs request a total fee award of $2,187,805.50 (including time expended on this Motion), consisting of $1,452,590.50 in attorneys' fees to the law firm of Girard Gibbs LLP ("GG") and $735,215 in attorneys' fees to the law firm of Lujan, Aguigui & Perez LLP ("LAP"). (Girard Decl. at 7; Declaration of Ignacio C. Aguigui In Support of Plaintiffs' Motion for an Award of Attorney's Fees and Costs ("Aguigui Decl.") at 7, Docket No. 204.) Plaintiffs also request an award of costs in the total amount of $88,445.23, consisting of $75,407.35 to the law firm of Girard Gibbs LLP and $13,037.88 to the law firm of Lujan, Aguigui & Perez LLP. (Girard Decl. at ¶ 37; Aguigui Decl. at ¶ 48.)

## II. STANDARD OF LAW

42 U.S.C. §1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988 (b). The party applying for fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). When determining fees, the Ninth Circuit requires that district courts calculate a "lodestar." *See Allen v. Shalala*, 48 F.3d 456, 458 (9th Cir. 1995). The lodestar is determined by multiplying the number of hours reasonably spent on a case by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433.

The lodestar may then be adjusted by considering the twelve factors articulated in *Kerr v. Screen Extras Guild Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), to the extent these factors have not been subsumed in the lodestar calculation. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1989). The *Kerr* factors include: (1) the time and labor required; (2) the difficulty and novelty of the issues; (3) the skill required; (4) preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent or fixed; (7) the restraints imposed by the client or the circumstances; (8) the amount involved and the results achieved; (9) experience, ability, and reputation of the attorneys; (10) the "undesirability" of the case; (11) nature and length of the professional relationship between the attorney and client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 69-70; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 1669, 176 L. Ed. 2d 494 (2010); *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006) (affirming *Kerr* standard for attorneys' fees).

### III. DISCUSSION

Plaintiffs are the prevailing party in this litigation, and pursuant to 42 U.S.C. §1988 Plaintiffs are entitled to legal fees for time reasonably expended on this case, as well as for time reasonably expended in the preparation of this fee application.

Defendants argue that Plaintiffs' attorneys' fee request should be denied altogether because Plaintiffs failed to provide time or billing records, relying instead on the Girard and Aguigui Declarations to provide summaries of the work performed. (Resp. at 8-9.) In the alternative, Defendants argue that GG should receive no more than $339,513 in attorneys' fees and LAP should receive no more than $242,000 in attorneys' fees due to block-billing, excessive hourly rates, overstaffing, and unnecessary motion practice and other litigation decisions. (Resp. at 11-20, 25-26.)

Assuming, arguendo, that Plaintiffs' documentation of their attorneys' fee request is inadequate, the remedy is not denial of the fees altogether but "the district court may reduce the award accordingly." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001) (citing *Hensley*, 461 U.S. at 424). The Court will thus determine a lodestar amount for Plaintiffs' counsel, taking into account the type of documentation submitted by Plaintiffs' counsel.

**A.     Lodestar Calculation**

   **1.  Reasonable Hours**

The Court finds that the 2,502.7 hours requested by the LAP Firm and the 3,337.8 hours requested by the GG Firm to be reasonable. Attorneys' fees may be awarded for work that is useful and of a type ordinarily necessary to secure the final result obtained from the litigation. *Nadarajah v. Holder*, 569 F.3d 906, 923 (9th Cir. 2009) (citations omitted); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker"); *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir.1982) (standard is whether work "would have been undertaken by a reasonable and prudent lawyer to advance or protect [the] client's interest in the pursuit of a successful recovery").

Defendants raise several objections to Plaintiff's requested hours, arguing that the hours should be reduced by 50% for overstaffing and time spent on media contacts. (Resp. at 10, 13-14.) Defendants further argue that Plaintiffs are not entitled to compensation for time requested either prior to the filing of the operative complaint or for a motion to compel that was never ruled upon. (*Id*. at 12-13.) Defendants' arguments are without merit. *See Moreno*, 534 F.3d at 1112 (rejecting post-hoc scrutiny of prevailing party's strategy); *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052-53 (9th Cir. 1991) (attorneys' fees can include

unsuccessful motion practice). The Court overrules Defendants' objections.

### 2. Reasonable Rate

"[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citations omitted); *see also Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984) (42 U.S.C. § 1988 attorney's fees to be calculated according to the "prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel").

#### a. Relevant Community

The parties disagree whether San Francisco or Guam hourly rates are appropriate for the San Francisco-based Girard Gibbs LLP.[2] The Ninth Circuit follows a "comparatively strict forum rule." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 n. 5 (2d Cir. 2008). "Rates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Camacho,* 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500-501 (9th Cir. 1997)); *see also Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 907 (9th Cir. 1995) (finding plaintiff's declaration that she had difficulty retaining local counsel insufficient to show unavailability); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (unavailability of local counsel

---

[2] Defendants do not argue that GG's rates are unreasonable for the San Francisco legal community. The Girard Declaration and attached exhibits as well as this Court's knowledge of hourly rates awarded in similar cases support finding that Plaintiff's requested hourly rates are reasonable if San Francisco were the relevant community. *See, e.g., Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010); *Rosenfeld v. United States DOJ*, 904 F. Supp. 2d 988, 1002 (N.D. Cal. 2012); *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1171 (N.D. Cal. 2012).

shown by "numerous declarations of San Francisco and Sacramento attorneys which directly support their contention that Sacramento attorneys and law firms with the requisite expertise and experience to handle this type of complex institutional prison reform litigation were unavailable"); *S. Yuba River Citizens League & Friends of River v. Nat'l Marine Fisheries Serv.*, No. CIV. S-06-2845 LKK, 2012 WL 1038131, at *6 (E.D. Cal. Mar. 27, 2012) (Karlton, J.) (unavailability of local counsel shown after "plaintiffs . . . [unsuccessfully] sent letters to seven law firms to solicit representation"); *Edwards v. City of Colfax*, No. CIV S 07-2153 GEB EFB, 2011 WL 572171, at *8 (E.D. Cal. Feb. 15, 2011) (Brennan, M.J.) (unavailability of local counsel shown after "plaintiffs [unsuccessfully] contacted the . . . District Attorney's Office, the Sierra Business Counsel, and several local environmental organizations. . . . and also sought representation from four attorneys in the Placer County/Nevada County area, and six attorneys in the Sacramento area").

In contrast, "theoretical" arguments that "San Francisco rates are necessary to the enforcement of civil rights cases" in another forum fail unless supported with evidence that "[local] rates preclude the attraction of competent counsel." *Barjon*, 132 F.3d at 501. A declaration that plaintiff's counsel "sent an email to over 600 members of the California Employment Lawyers Association seeking co-counsel" is insufficient to show unavailability. *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1127 (E.D. Cal. 2011); *see also Doe v. Bridgeport Police Dep't*, 468 F. Supp. 2d 333, 338-39 (D. Conn. 2006) (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983)).

Plaintiff's counsel has failed to present any evidence that local counsel was either unwilling or unavailable. The only explanation given for the use of GG appears in the Aguigui Declaration and the Reply. Attorney Aguigui declares:

> We believed that any lawsuit needed to be brought as a class action, and given the complexity of the issues, and in order to maximize the

> potential for success in bringing a case to Court and prevailing, my partner . . . and I determined that it was necessary to go off-island and seek counsel experienced in complex class action cases. To our knowledge, no other Guam law firm brought suit to challenge the Government's failure to properly administer GTIT refunds.

(Aguigui Decl. at ¶ 8.) The additional explanation provided in the Reply is speculative:

> The challenged tax refund practices had been in existence for more than 20 years and were well known to the people of Guam. In that time, no other attorneys stepped forward to represent a proposed class of taxpayers. . . . This may have been because they did not want to challenge the Governor of Guam and other high-ranking Government officials . . . because they doubted the lawsuit would be successful, or because of other reasons entirely. But [LAP], the only Guam law firm willing to represent the class, made the reasoned judgment that it was necessary to step up to the plate, and to partner with an off-island firm with [GG's] experience and resources.

(Reply at 7:26-8:7.) These conclusory statements cannot support a finding that local counsel was either unwilling or unavailable. *Compare Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 698 (9th Cir. 1996) (finding that Guam counsel was unwilling based on declarations by local attorneys and because the record showed plaintiffs faced threats of excommunication by the Roman Catholic Church and death threats).

Not only is there an absence of evidence that would explain the reasoning behind LAP's "reasoned judgment," but Plaintiffs' counsel's own fee application contradicts the argument that GG provided experience and resources that were otherwise unavailable on Guam.[3] Out of a total 5,840.5 hours billed by Plaintiffs' counsel, GG billed 3,337.8 or approximately 57%. (Girard Decl. at 7.) GG Attorney Stein (1,602.5 hours), Law Clerk Kramer (485.15 hours), and junior

---

[3] LAP's fee application references their work on *Torres v. Guam*, another consolidated class action which dealt with complex tax issues. Case No. 04-cv-38 (D. Guam 2004) (Gatewood, C.J.). Notably, in that case, Plaintiffs' counsel partnered with local co-counsel firm Cabot Mantonona LLP. (*Id.,* Docket No. 163.)

8

Attorneys Lindstrom, Bluestone, and Tepper (260.9 aggregate hours) billed nearly three-quarters of GG's hours. (*Id.*) Attorney Stein is a 2007 law school graduate. (Girard Decl., Ex. D.) It appears that Attorney Stein had primary responsibility for briefing and arguing the motions in this case though Attorney Aguigui signed off on briefs and appeared at all court hearings and most depositions as well. (Girard Decl. at ¶ 17; Aguigui Decl. at ¶ 22; Declaration of Kenneth Orcutt In Support of Defendants' Response to Plaintiffs' Motion ("Orcutt Decl.") at ¶ 15, Docket No. 206-1; Docket Nos. 20, 50, 66, 86, 171, 194.) Both Attorneys Bluestone and Tepper are 2010 law school graduates. (Girard Decl., Ex. D.) Attorney Lindstrom is not included in the GG firm resume, but his requested billing rate is the same as that of Attorneys Bluestone and Tepper. Therefore, the Court assumes he has a similar level of experience. Law Clerk Kramer was a summer associate at GG in 2011 and again in 2012. (*Id.* at 6.) The Court does not question the ability of any of these individuals but is not persuaded that a mid-level associate, three junior associates, and a law student contributed experience and resources that were otherwise unavailable on Guam.[4]

Accordingly, the Court finds that the relevant community for purposes of determining a reasonable hourly rate is Guam.

### b. Hourly Rate

The rates awarded Plaintiffs' counsel must be in line with those traditionally received from paying clients, and should not be lower than those customarily paid to private practitioners. *Campbell v. Cook*, 706 F.2d 1084, 1087 (10th Cir. 1983) (citing *Dennis v. Chang*, 611 F.2d 1302 (9th Cir. 1980)). The attorney's customary rate is thus a reasonable starting point for determining the appropriate hourly rate. *See, e.g., Hadix v. Johnson,* 65 F.3d 532, 536 (6th Cir. 1995) (well-defined billing rates can be used to help calculate a reasonable rate for a fee

---

[4] In contrast, the senior attorney who billed the most time on this case is Attorney Aguigui of LAP, who reports 1,791.2 hours spent on this case. (Aguigui Decl. at 7.)

9

award); *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 422 (3d Cir. 1993) ("prevailing market rate can often be calculated based on a firm's normal billing rate because, in most cases, billing rates reflect market rates"); *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003) (citations omitted).

**Lujan, Aguigui, & Perez LLP**. LAP seeks $350.00 per hour for both Attorneys Lujan and Aguigui. Attorney Lujan has practiced law for over thirty years and has conducted over three hundred trials over the course of his career. (Aguigui Decl. at ¶ 24, Ex. 1.) Attorney Lujan has also served as a Judge *Pro Tem* for the Superior Court of Guam. (*Id.*) Attorney Aguigui has practiced law for sixteen years and has served in a number of Guam government positions, including as Chief Legal Counsel of the Office of the Governor. (*Id.*) LAP also seeks $100.00 per hour for Paralegal Topasna and $125.00 per hour for Paralegal Brooks. (Aguigui Decl. at ¶ 24.) Paralegal Topasna has eighteen years of experience and Paralegal Brooks, who has also earned a law degree, has forty-five years of experience. In support of its requested rates, LAP has provided a detailed declaration from Attorney Aguigui explaining each individual's role and responsibilities on this litigation and attaching a brief biography for each attorney. The Aguigui Declaration states that the requested rates "fall within the range of fees . . . charge[d] clients in hourly rate matters." (Aguigui Decl. at ¶ 47.)

Defendants argue that Attorneys Lujan and Aguigui's hourly rates should be reduced to $250 per hour. (Orcutt Decl. at ¶ 7.) Defense counsel further argues that Paralegals Topasna and Brooks' hourly rates should be denied altogether because Paralegal Topasna performed tasks more appropriate to a legal secretary and Paralegal Brooks requested a lower hourly rate for contemporaneous work in another case. (Orcutt Decl. at ¶¶ 18-19.)

First, neither of the exhibits submitted by Defendants in support of reducing Attorneys Lujan and Aguigui's rates is persuasive. Defendants submit (1) a

Decision and Order granting attorney's fees to LAP for work done from 2008 to 2010 and (2) a 2011 fee request (for work done in 2009) by a third-party Guam attorney in support of their argument that $250 rather than $350 per hour is a reasonable rate for both Attorneys Lujan and Aguigui. (Orcutt Decl., Exs. A, B.) The Decision and Order awarded fees to Attorney Lujan at the rate of $275 per hour for work done in 2009. *See also Santos v. Camacho*, Civ. No. 04-00006, 2008 WL 8602098 (D. Guam Apr. 23, 2008) *aff'd sub nom. Simpao v. Gov't of Guam,* 369 F. App'x 837 (9th Cir. 2010) (finding that declarations submitted in 2008 by three Guam law firms established a range for experienced partners from approximately $200/hour to a high of $325/hour). That another experienced Guam attorney billed $250 per hour during the same period does not "challeng[e] the accuracy and reasonableness of the . . . facts asserted by [Plaintiffs' counsel]." (*Camacho,* 523 F.3d at 980; Orcutt Decl., Ex. A.) The Ninth Circuit has warned that "a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho*, 523 F.3d at 981. Having considered the experience and education of Attorneys Lujan and Aguigui, and in the absence of any contrary evidence, the Court finds that the requested rate of $350 per hour for Attorneys Lujan and Aguigui is reasonable.

Second, neither Exhibits H nor I submitted by Defendants supports eliminating the fees claimed by Paralegals Topasna and Brooks, but Exhibit I supports reducing the hourly rate for Paralegal Brooks. The Supreme Court held in *Missouri v. Jenkins by Agyei* that the phrase "reasonable attorneys fee" for purposes of 42 U.S.C. § 1988 refers to a "reasonable fee for the work product of an attorney," including the work of "secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client." 491 U.S. 274, 285, 109 S. Ct. 2463, 2470, 105 L. Ed. 2d 229 (1989). The Ninth Circuit has interpreted *Jenkin*s to mean that "reasonable attorney's fees' include litigation expenses . . . when it is 'the prevailing practice in a given

community' for lawyers to bill those costs separate from their hourly rates." *Grove v. Wells Fargo Fin. California, Inc*., 606 F.3d 577, 580 (9th Cir. 2010) (citations omitted). Exhibit H, consisting of several emails from Paralegal Topasna sent from mid-May to early-July 2012, is irrelevant to the question of whether it is the prevailing practice in Guam to bill paralegal time separately. (Orcutt Decl., Ex. H.) Exhibit I actually supports awarding paralegal fees in this matter because it reflects that Paralegal Brooks was also billed separately for work done in 2012 on another case, albeit at a lower hourly rate of $100.00. (Orcutt Decl., Ex. I.) LAP has not explained this discrepancy in its Reply. Accordingly, the Court finds that a rate of $100.00 per hour for Paralegals Topasna and Brooks is reasonable.

**Girard Gibbs LLP.** Having determined that the relevant community for determining a reasonable hourly rate is Guam, the Court must now determine reasonable hourly rates for each of the attorneys and staff of GG who billed time on this case. Defendants argue that Attorneys Girard, Steiner, Hughes, Munroe, and Stein should be compensated at an hourly rate of $250.00. (Orcutt Decl. at ¶ 7.) Defendants further argue that the more junior GG Attorneys—Lindstrom, Bluestone, and Tepper—should be compensated at an hourly rate of $100.00. Finally, Defendants argue that GG litigation assistants should not be compensated. (Orcutt Decl. at ¶ 9.) Defendants do not submit any evidence in support of their arguments, merely attaching a billing statement from a Guam attorney who graduated law school in 2000 and who charges $150.00 per hour for her time. (Orcutt Decl. at ¶ 8, Exs. C, D.)

The Court finds that a rate of $350.00 per hour, commensurate with that awarded to senior Guam attorneys, is reasonable for Attorneys Girard, Steiner, Hughes, Munroe and Stein, and a rate of $150.00 per hour for the junior Attorneys Lindstrom, Bluestone, and Tepper is reasonable. (*See* Aguigui Decl., Ex. A; Orcutt Decl., Exs. A (LAP associate Delia S. Lujan Wolff, a 2003 law school

graduate, charged $150.00 per hour in 2009), C, D; *Santos*, 2008 WL 8602098 (finding a requested rate of $150/hour to be reasonable for associates of a Guam firm in 2008).) The Court further finds that $100 per hour is a reasonable rate for GG litigation assistants and summer Law Clerk Kramer.

In sum, the Court finds the following rates to be reasonable for each of Plaintiffs' counsel.

| Name | Position | Graduated Law School | Requested Billing Rate | Approved Billing Rate |
|---|---|---|---|---|
| David J. Lujan | Partner | 1979 | $350 | $350 |
| Daniel Girard | Partner | 1984 | $795 | $350 |
| Amanda Steiner | Partner | 1997 | $595 | $350 |
| Ignacio C. Aguigui | Partner | 1997 | $350 | $350 |
| Dylan Hughes | Partner | 2000 | $545 | $350 |
| Geoffrey Munroe | Associate | 2003 | $535 | $350 |
| David Stein | Associate | 2007 | $420 | $350 |
| Eric Lindstrom | Associate | Not listed | $330 | $150 |
| Gabriel Bluestone | Associate | 2010 | $330 | $150 |
| Lesley Tepper | Associate | 2010 | $330 | $150 |
| Elizabeth Kramer | Law Clerk | Not listed | $200 | $100 |
| Unnamed Litigation Assistants | | | $150 | $100 |
| Edna M. Topasna | Paralegal | | $100 | $100 |
| James S. Brooks | Paralegal | | $125 | $100 |

**B.** *Kerr* **Factors**

The lodestar is presumed to be a reasonable fee but it may be adjusted in "rare circumstances" by considering any of the twelve factors articulated in *Kerr,* to the extent these factors have not been subsumed in the lodestar calculation. *See Perdue*, 130 S. Ct. at 1673 ("[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in [certain] rare circumstances.") (citations omitted). *Kerr* factors which generally may not be used as a ground for lodestar adjustment include "the novelty and complexity of a case because these factors 'presumably [are] fully reflected in the number of

13

billable hours recorded by counsel. . . . [T]he quality of an attorney's performance [also] generally should not be used to adjust the lodestar '[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.'" *Id.* That a representation was undertaken on a contingency basis, without more, is also not a permissible basis to adjust the lodestar. *See City of Burlington v. Dague*, 505 U.S. 557, 566, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992) (rejecting contingency enhancement).

Counsel seeking an adjustment of the lodestar figure bears the burden of showing by "specific evidence on the record that receipt of a reasonable hourly rate times the number of hours reasonably spent on these matters does not constitute a fully compensatory fee." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1264 (9th Cir. 1987). Enhancement may be appropriate where counsel provides specific evidence that her performance required an "extraordinary outlay of expenses and the litigation is exceptionally protracted"; where there is an "exceptional delay in the payment of fees"; or if the hourly rate does not reflect the attorney's true market value, such as when "the 'hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar)." *Perdue,* 130 S. Ct. at 1674-75 (citing as an example *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000)). Plaintiffs argue that the last factor justifies an upward adjustment here, but fail to present any specific evidence with regard to this factor or any other. *See Perdue*, 130 S. Ct. at 1673 ("An enhancement must be based on 'evidence that enhancement was necessary to provide fair and reasonable compensation'") (citing *Dague*, 505 U.S. at 899, 901). This case is not like the *Salazar* case where the court determined a reasonable rate by reference to a Consumer Price Index-modified variation on the "*Laffey* matrix [which] presented a grid which established hourly rates for lawyers of differing levels of experience during [a specific] period." *Salazar*, 123 F. Supp. 2d at 13. This Court has not used the *Laffey* matrix to determine reasonable hourly rates nor

any similarly rigid reference.

To the extent that Plaintiffs intend to argue that calculating a lodestar with an hourly rate lower than that requested is by definition a failure to consider their "true market value," they do not cite any authority to support such a proposition and the Court has found none. The Court determined a reasonable hourly rate for this District. Plaintiffs were obligated to present evidence in support of their argument that out-of-District rates should instead be used. *See supra* at 6-8; *see also Schwarz,* 73 F.3d at 907. Having failed to do so, the *Kerr*-factor adjustment analysis is not an appropriate place to revisit the Court's initial lodestar calculation. *See, e.g.*, *Sierra Club v. U.S. Envtl. Prot. Agency*, 339 F. App'x 678, 679 (9th Cir. 2009) ("The forum rule is not a perfectly precise instrument and sometimes does, as predicted at the time of its adoption, 'undercompensate certain attorneys and overcompensate others.'"); *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) (affirming district court's determination that San Francisco rates were not necessary where the justification of complex, specialized knowledge and experience did not apply); *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997) ("the district court . . . adjust[s] the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation").

Accordingly, the Court finds that none of the "rare circumstances" justifying a lodestar enhancement are present in this case.

**C.    Costs**

Plaintiffs also seek costs. The Local Rules of this Court provide that "[w]ithin eleven (11) days after the entry of a judgment allowing costs, the prevailing party shall serve on the attorney for the adverse party and file with the clerk an application for the taxation of costs." LR 54.1. The Local Rules further provide that "[a] failure to comply with this Rule waives the right to recover all

costs, other than the clerk's costs, which may be inserted in the judgment without application." *Id.* This Court's January 30, 2013 Permanent Injunction and Final Judgment extended the time limits provided in LR 54.1 by allowing Plaintiffs fourteen days to seek both costs and attorney's fees. [Docket No. 197.] The Court's January 30 Final Judgment was not intended, however, to substitute the Court's judgment on costs for that of the clerk in the first instance.

Accordingly, if Plaintiffs wish to recover their costs, then they must file an application for the taxation of costs with the clerk of this Court no later than eleven days after the date of this Order.

### D. The Court's Fee Calculation

**Girard Gibbs LLP**

| Name | Reasonable Hours | Reasonable Hourly Rate | Lodestar |
| --- | --- | --- | --- |
| Daniel Girard | 389.70 | $350 | $136,395 |
| Amanda Steiner | 222.40 | $350 | $77,840 |
| Dylan Hughes | 83.55 | $350 | $29,242.5 |
| Geoffrey Munroe | 168.05 | $350 | $58,817.5 |
| David Stein | 1602.50 | $350 | $560,875 |
| Eric Lindstrom | 108.20 | $150 | $16,230 |
| Gabriel Bluestone | 131.70 | $150 | $19,755 |
| Lesley Tepper | 21.00 | $150 | $3,150 |
| Elizabeth Kramer | 485.15 | $100 | $48,515 |
| Unnamed Litigation Assistants | 125.55 | $100 | $12,555 |
| **Total** | | | **$963,375** |

**Lujan, Aguigui & Perez LLP**

| Name | Reasonable Hours | Reasonable Hourly Rate | Adjustment | Lodestar |
| --- | --- | --- | --- | --- |
| David J. Lujan | 144.8 | $350 | None | $50,680 |
| Ignacio C. Aguigui | 1791.2 | $350 | None | $626,920 |
| Edna M. Topasna | 528.9 | $100 | None | $52,890 |
| James S. Brooks | 37.8 | $125 | $100 | $3,750 |
| **Total** | | | | **$734,240** |

## IV.  CONCLUSION

Accordingly, the Court **GRANTS IN PART** Plaintiffs' Motion for an Award of Attorney's Fees and Costs and awards the law firm of Lujan, Aguigui & Perez LLP fees in the total amount of **$734,240.00**.  The Court further awards the law firm of Girard Gibbs LLP fees in the total amount of **$963,375.00**.  The Court refers the balance of Plaintiffs' Motion requesting costs to the clerk of Court pursuant to Local Rule 54.1.  Plaintiffs must apply to the clerk of Court for taxation of costs no later than eleven days from the date of this Order.

**IT IS SO ORDERED.**

DATED:  December 2, 2013

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE